453 So.2d 558 (1984)
Elgin D. HILL
v.
COMMISSION ON ETHICS FOR PUBLIC EMPLOYEES.
No. 83-C-2611.
Supreme Court of Louisiana.
May 14, 1984.
Rehearing Denied June 14, 1984.
*559 Robert G. Pugh, Pugh & Pugh, Shreveport, for applicant.
R. Gray Sexton, Peter G. Wright, Baton Rouge, Commission on Ethics for Public Employees, for respondent.
WATSON, Justice.
Elgin D. Hill is a licensed cosmetologist and co-owner of a beauty salon, the R & E House of Beauty. She has served for the past twelve years as a member of the Louisiana Board of Cosmetology. In addition to serving on the state board, she is the only Louisiana member of the National Accredited Commission for the Cosmetology Arts and Sciences, an elective position, and has served on other national boards.
In Opinion No. 80-67, the Commission on Ethics for Public Employees directed Ms. Hill to either resign from the Louisiana Board of Cosmetology, or divest herself of her interest in the R & E House of Beauty. Upon her failure to accept one of those alternatives, it was ordered that she be removed from the board by the Governor. The court of appeal affirmed the decision of the Commission. 442 So.2d 592 (La.App. 1 Cir.1983). A writ was granted to review the order of the Commission and the judgment of the court of appeal. 444 So.2d 1217 (La.1984).

FACTS
Ms. Hill was appointed to the Louisiana Board of Cosmetology in 1972. At that time, she was a partner in a beauty school and a beauty salon. Since board members may not "... be connected directly or indirectly with the ownership of a school licensed in this state ...",[1] Ms. Hill divested herself of the school ownership in an exchange whereby her partner took over the school and Ms. Hill took over the beauty salon.
The members of the Board of Cosmetology include some at large members, and others like Ms. Hill who are appointed by the Governor to represent the congressional districts.[2] She is the member from the fourth congressional district, where her beauty salon is located.
The board employs no less than one inspector from each of the five public service commission districts,[3] and the board members representing congressional districts appoint inspectors with the approval of the Governor.[4] However, the inspectors are civil service employees of the state and beneficiaries of the protections offered by that status.[5] A board member has no authority to discharge an inspector.
In carrying out her duties, Ms. Hill has appointed an inspector, one E.J. Smithers, who to some extent works under her supervision. Although not Ms. Hill's personal choice, Smithers received the job because he had the highest score on the civil service examination. His primary duty is visiting beauty salons and completing inspection reports. These are brief documents which list only two categories of information concerning each "beauty shop" inspected, the first being proper registration and the second being sanitary conditions.
As summarized by Smithers, the inspector does the following:

*560 "I see that they have a booth operator's license current, a current cosmetology license; that they have wet and dry sterilizers at each station, that the floors are clean at each station; that their tools and roller implements are kept in sterile cabinets; that their dirty towels are in a covered container and their clean towels are in a closed container of sterile stuff." (Tr. 58)
Mr. Smithers, a licensed cosmetologist since 1962, testified that he inspects Ms. Hill's beauty salon about four or five times every two years; he has never received any complaints about that shop. While he inspects her salon, he indicated that it would be a simple matter for an inspector from a nearby district to substitute for him. It is customary for inspectors to work outside their districts.
Witnesses testified that Ms. Hill is universally regarded as an excellent board member; she discharges her duties thoroughly and efficiently; and there have never been any complaints to the board concerning Ms. Hill or her salon.
The Commission on Ethics, after holding a private hearing and then a public hearing at which five witnesses testified, made the following findings of fact:

"FINDINGS OF FACT
"1. Elgin Hill has served by gubernatorial appointment as a member of the Louisiana State Board of Cosmetology from the Fourth Congressional District since 1972.
"2. Since that time, and to date, the Respondent has continued to own a controlling individual interest in, to manage and operate a beauty salon, known as `R & E House of Beauty,' and in connection with the management and ownership of that salon has periodically applied to and has been granted by the Louisiana State Board of Cosmetology a Certificate of Registration.
"3. `R & E House of Beauty' is located at 1233 Milam Street in Shreveport, Louisiana within the Fourth Congressional District of the Louisiana State Board of Cosmetology.
"4. Additionally, since 1972, Respondent has personally practiced as a cosmetologist and in connection with that practice has applied to the Louisiana State Board of Cosmetology and has been granted a Certificate of Registration as a cosmetologist.
"5. Likewise, Respondent in her capacity as a licensed cosmetologist, operates a `booth' at the `R & E House of Beauty' and discharges her services within the jurisdiction of the Fourth Congressional District of the Louisiana State Board of Cosmetology.
"6. As a full-time salaried member of the Board of Cosmetology, Respondent is required to and indeed does maintain a `district office' and has selected as an office for the duties she enjoys as a member of the Board of Cosmetology a facility in the building she owns at the location housing the `R & E House of Beauty.'
"7. There is one inspector employed by the Board of Cosmetology who is responsible for inspections and enforcement of the rules and regulations of the Board of Cosmetology within the Fourth Congressional District. The inspector in question periodically inspects the `R & E House of Beauty' as well as the `booth' of the Respondent in order to insure compliance with pertinent regulations of the Board.
"8. The inspector is subject to general as well as direct supervision by the Board member serving from the Fourth Congressional District in which he discharges his duties, i.e., the Respondent.
"9. Additionally, the inspector's performance evaluations, applications for merit, step, and other wage increases as well as certifications for leave and attendance are all made by the Respondent.
"10. Though the Respondent frequently accompanies the inspector during his routine inspections, she does not accompany the inspector whenever he is inspecting the `R & E House of Beauty' or the *561 `booth' maintained by the Respondent at the `R & E House of Beauty' and has never been present in the beauty salon at the time the inspections were made." (Tr. 11-12)
The Commission on Ethics concluded that "... both the letter and spirit of the Code prohibits ..." Ms. Hill from serving. Although the Commission was hard-pressed to state precisely the nature of the violation, it apparently rested on two facts: that Ms. Hill has some supervisory authority over inspector Smithers; and the R & E House of Beauty is licensed by the Board of Cosmetology. The conclusion is summarized in the opinion of the Commission on Ethics as follows:
"Respondent, (1) by supervising the investigator who is responsible for the inspections of not only the `R & E House of Beauty,' but also the competitors of that establishment, (2) by periodically reviewing and approving the inspections and other activities of this inspector, (3) by having the responsibility for the review and approval or disapproval of the applications for registration submitted on behalf of not only the `R & E House of Beauty,' but by the Respondent, as well as by the competitors of the Respondent and of the `R & E House of Beauty,' (4) and generally, by her actions as an active member of the Board of Cosmetology responsible for the administration of the provisions of the Cosmetology Act, does not only factually, but by operation of law, `participate' in transactions in which both she and the `R & E House of Beauty' have a substantial economic interest." (Tr. 16)
ISSUES
The issues to be decided therefore are:
(1) Whether Ms. Hill's supervision of the inspector, while being a licensed cosmetologist and part-owner of the R & E House of Beauty, constitutes a violation of the Code of Governmental Ethics, LSA-R.S. 42:1101, et seq.
(2) Whether she has responsibility for review and approval of applications for registration by beauty salons, which would constitute a violation of the Code, considering her licensed and ownership status.
(3) Whether service on the Board, while being a registered cosmetologist and part-owner of the R & E House of Beauty, somehow violates the spirit of the Code.
SUPERVISION OF INSPECTOR
The short answer to the issue posed by Ms. Hill's supervision of the inspector is that there is no necessity for Smithers to inspect the R & E House of Beauty. Other inspectors from nearby districts can easily monitor the salon in which Ms. Hill has an economic interest. As to the inspector's duties concerning other salons, there is no indication that this creates any impropriety relating to Ms. Hill's position on the board. The evidence demonstrates the contrary: Ms. Hill and Smithers are dedicated and conscientious persons who carry out their duties with commendable zeal, integrity, and skill. Therefore, since there is no showing of a violation of the Code of Ethics with regard to the supervision of the inspector, the first issue does not form a basis for sanctions against Ms. Hill.
REGISTRATIONS OF THE SALON
The evidence in the record indicates that the R & E House of Beauty has been a licensed shop since 1955 when a Ms. Davis was issued her initial license for a five dollar fee. Thereafter, each year through 1982 the shop has been issued a renewal license, the only variation being that in 1965 the fee increased to ten dollars, in 1974 to fifteen dollars, and in 1980 to twenty dollars. There is a notation that Ms. Hill became a co-owner, although the date is not specified.[6]
*562 It is apparent that the renewal of the shop license, as well as Ms. Hill's license to practice cosmetology,[7] which is also reflected in the records of the board, is a routine and mechanical thing. There is no showing that the board is required to vote or otherwise exercise authority with respect to the renewal of shop licenses and cosmetologist licenses.
Therefore, by serving on the Board of Cosmetology, while holding a shop license and a cosmetologist license, relator does not violate of the Code of Ethics.
SPIRIT OF THE CODE
The final holding of the Commission on Ethics is that Ms. Hill's service on the Board of Cosmetology violates the spirit of the Code of Ethics. Regardless of whether such a violation would warrant removal, the various laws pertaining to administrative boards in the State of Louisiana do not support this holding of the Commission.
There is a substantial argument that the laws providing for the Board of Cosmetology require or at least authorize service on the board by a person who is a licensed cosmetologist and/or a shop owner. The statute itself, by providing that board members "shall have been" actively engaged for at least five years prior to their appointment as a cosmetologist or teacher[8] implies that practitioners are to serve on the board. The Commission contends the phrase means antecedent service. The court of appeal held that a board member might be a practicing beauty operator but concluded that it is "inevitable" a board member/shop owner would have a conflict of interest prohibiting service. 442 So.2d 592 at 595. That conclusion is not supported by the record.
Additionally, the law establishing the Board of Cosmetology prohibits ownership or interest in a beauty school. This is the singular prohibited activity; there is no specific prohibition in the statutes against being a cosmetologist or owning a salon. Thus, the law must be interpreted under the legal maxim inclusio unius est exclusio alterius.[9] In other words, by barring only beauty school owners from serving on the Board of Cosmetology, the legislature by implication allowed cosmetologists and the owners of beauty salons to serve.
As Judge Sartain stated when concurring in the Louisiana Milk Commission case:
"It is my belief that the principal reason why the Legislature decreed that three members of the Commission are required to be milk processors and one member a milk producer is that the Legislature deemed that these appointees would be possessed of certain expertise in the handling and production of milk. This does not, per se, create a conflict of interest." Louisiana Milk Commission v. Louisiana Commission on Governmental Ethics, 298 So.2d 285, 291 (La.App. 4 Cir.1974).
Substantiating and lending weight to this observation is the impressive compilation in relator's brief of the state boards and administrative bodies which mandate professional status as a qualification for appointment. For example, the State Board of Certified Public Accountants requires its members to be certified public accountants, LSA-R.S. 37:73; the State Board of Registration for Professional Engineers and Land Surveyors has similar requirements, LSA-R.S. 37:683 A.; the Louisiana State Board of Optometry Examiners, requires members to be registered optometrists who have practiced for seven years, LSA-R.S. 37:1042 A. In close parallel with the cosmetology board, the five members of the Board of Barber Examiners must be practical barbers who have followed the occupation of barbering for five years, LSA-R.S. 37:341 B. All of these board members have the duties of examining applicants, *563 issuing and renewing licenses and/or revoking licenses.
The Commission on Ethics attempts to distinguish the cosmetology board because the members are paid a salary rather than a per diem for attendance. This attempted distinction has no significance.[10]
The court of appeal's reliance on Glazer v. Commission on Ethics for Public Employees, 431 So.2d 752 (La.1983) is misplaced. While the cases are alike in that both records demonstrate no suggestion of impropriety and that both Glazer and Ms. Hill were and are highly ethical and dedicated people, the factual context is essentially different. Glazer's wholly owned corporation was engaged in multi-million dollar sales to companies closely regulated by the Mineral Board of which he was a voting member. The Commission on Ethics found that he had a real and substantial conflict of interest. 431 So.2d 752 at 755. It was not a situation like Ms. Hill's where the Commission found only a remote possibility of a conflict of interest which it could not pinpoint or document.
The findings and conclusions of the Commission are insufficient to support a violation of the Code of Ethics requiring Elgin Hill to resign.

CONCLUSION
Since the Commission on Ethics incorrectly concluded that Elgin D. Hill was in violation of the Code of Governmental Ethics, it is unnecessary to address certain constitutional questions suggested by counsel. The order that Ms. Hill either divest herself of her ownership interest in the R & E House of Beauty or resign from the Louisiana Board of Cosmetology is reversed and set aside as is the decision of the Court of Appeal affirming that order.
REVERSED.
DENNIS, J., dissents with reasons.
BLANCHE, J., dissents and assigns reasons.
DENNIS, Justice, dissenting.
I reluctantly dissent.
If we were free to base our decision on the wisdom of the statute or the equities of this particular case, I would gladly join the majority. However, under the code, it appears there is a conflict of interest. The board member in effect participated in approving her own applications for licenses. Thus, she participated in transactions between the board on which she serves and herself. Renewals of these licenses probably were "routine and mechanical thing[s]" as the majority says, but I do not believe the Code authorizes us to distinguish between transactions involving conflicts of interest on this basis. I reserve judgment, however, on the constitutional issue raised by relator which the majority does not reach and which I have not had an opportunity to examine fully.
BLANCHE, Justice, dissenting.
R.S. 42:1112 B (2) prohibits a public servant from participating in a "transaction" involving himself and the governmental entity of which he is a member. Relator's duties as a board member involve the licensing and inspection of her own private business over which she had jurisdiction.
The spirit and purpose of the Ethics Code is to insure that the public employees be independent and impartial so as to instill public confidence in the integrity of the government. With this stated purpose as a premise I would define the foregoing activity of relator as a "transaction" proscribed by the above statute.
I further agree that no specific instance of impropriety as a result of Ms. Hill's indirect supervision of her own establishment has been demonstrated. But this fact, while commendable, is not relevant to a determination of whether plaintiff violated the statutory prohibition against potential *564 conflicts of interest. Unlike other public employees, appointed board members do not have the freedom to disqualify themselves from participating in a transaction involving the governmental entity on which they serve and their own private economic interest. La. R.S. 42:1112(C). Instead, a potential board member ought to divest himself of his interests before assuming his governmental office. Therefore, the trial court's order requiring Ms. Hill to divest herself of her interest in the salon or resign was correct.
I respectfully dissent.
NOTES
[1] LSA-R.S. 37:493 B. provides:

"Board members, other than the executive secretary, shall have been actively engaged for at least five years prior to their appointment, in this state, in the activities described in the definition of `operator' and/or `teacher' as set forth in this part. The board members shall not all be graduates of the same school of the art, nor shall any board member be connected directly or indirectly with the ownership of a school licensed in this state."
[2] LSA-R.S. 37:493 A.
[3] LSA-R.S. 37:499.
[4] LSA-R.S. 37:493 D.
[5] LSA-R.S. 37:499 A.
[6] This information is taken from certified copies of the records of the Board of Cosmetology, Tr. 109-110.
[7] The Commission does not press the matter of Ms. Hill holding a personal license.
[8] LSA-R.S. 37:493 B.
[9] The inclusion of one is the exclusion of another. Black's Law Dictionary, Fifth Edition, West, St. Paul, C. 1979, p. 687.
[10] According to Joel Mumphrey, Chairman of the Cosmetology Board, the salary is not a living wage.