461 So.2d 1227 (1984)
N.R. BROUSSARD, et al.
v.
COMMISSION ON ETHICS FOR PUBLIC EMPLOYEES.
No. CA 83 1393.
Court of Appeal of Louisiana, First Circuit.
December 28, 1984.
*1230 Charles Sonnier, Abbeville, for plaintiffsappellants.
R. Gray Sexton and Peter G. Wright, Baton Rouge, for defendant-appellee.
Before GROVER L. COVINGTON, C.J., and LOTTINGER and JOHN S. COVINGTON,[*] JJ.
GROVER L. COVINGTON, Chief Judge.
N.R. Broussard, Sr. and Broussard Brothers, Inc. have appealed from the decision of the Commission on Ethics for Public Employees (the Ethics Commission) which held that N.R. Broussard, Sr. had violated Section 1111 C(2)(d) of the Code of Governmental Ethics and that Broussard Brothers, Inc. had violated Section 1113 B of the Code. In the decision, the Commission concluded that Mr. Broussard had not violated Section 1112 B(5) of the Code. No penalty was imposed on Mr. Broussard, but the maximum fine of $5,000 was imposed on Broussard Brothers, with all but $1000 of the fine suspended. The execution of the judgment was stayed pending this appeal. We affirm.
On June 21, 1982, the Commission on Ethics for Public Employees received a letter suggesting that N.R. Broussard, Sr., a member of the Abbeville Harbor and Terminal District Commission (the Harbor Commission) had participated at that Commission's June 15, 1982 meeting in consideration of various bid proposals to do certain work for the Harbor Commission. This letter also suggested that one of the bidders on this contract, Swampland Enterprises, Inc., was in debt to Mr. Broussard. This correspondence did not meet the requirements for formal complaints contained in Section 1141 A(1) of the Code, and it was not treated as such by the Ethics Commission.
Prior to referring this matter to a formal investigation, the Ethics Commission instructed its staff to conduct a "fact-finding" investigation, which it did. In addition to obtaining information relative to the allegations contained in the initial letter, the staff observed that equipment belonging to Broussard Brothers, Inc. (Broussard Brothers) was performing work on the Harbor Commission site. The staff received information that this equipment was on the site because Broussard Brothers was performing subcontract work for the contractor, Coastal Contractors, Inc.
Based on the "fact-finding" report, the Ethics Commission adopted a resolution directing its staff to formally investigate possible violations of the Ethics Code by N.R. Broussard, Sr. and/or Broussard Brothers, Inc., as follows:
(1) that Mr. N.R. Broussard, Sr. may have violated Section 1112 B(5) of the Code of Governmental Ethics (LSA-R.S. 42:1112 B(5)) by having participated in a June 15, 1982 meeting of the Abbeville Harbor and Terminal District Commission, at which meeting a bid submitted by Swampland Enterprises, which company leases property from Mr. N.R. Broussard, Sr. [through Broussard Brothers, Inc.,][1] and by virtue of said lease owes N.R. Broussard, Sr. a thing of economic value, was considered;

*1231 (2) that Mr. N.R. Broussard, Sr. or Broussard Brothers, Inc. may have violated Section 1113 B of the Code of Governmental Ethics (LSA-R.S. 42:1113 B) by having bid on and entered into in a subcontract under the supervision and jurisdiction of the Abbeville Harbor and Terminal District Commission, specifically, a subcontract between Broussard Brothers, Inc. and Coastal Contractors, Inc., to do river excavation in connection with a contract between the Abbeville Harbor and Terminal District Commission and Coastal Contractors, Inc.; and
(3) that Mr. N.R. Broussard, Sr. may be in violation of Section 1111 C(2)(d) of the Code of Governmental Ethics (LSA-R.S. 1111 C(2)(d)) in that he may have received a thing of economic value from Broussard Brothers, Inc. which, through the subcontract mentioned in Paragraph 2, had a contractual, business, and financial relationship with his agency, the Abbeville Harbor and Terminal District Commission.
By letter of December 7, 1982, counsel for Mr. Broussard requested that the Ethics Commission take no action with respect to this investigation until either he or Mr. Broussard could meet personally with the Commission, or its staff. As a result of this request, Mr. Broussard appeared at a Ethics Commission meeting in executive session on April 8, 1983.
At its May 13, 1983 meeting, the Ethics Commission scheduled a public hearing in order to determine whether N.R. Broussard, Sr. or Broussard Brothers had violated various provisions of the Ethics Code. The public hearing was held on July 25, 1983. On September 15, 1983, a written decision concerning this matter was published. In its opinion, the Ethics Commission concluded that Mr. Broussard had not violated the Ethics Code with respect to his participation in the Harbor Commission's consideration of the Swampland Enterprises, Inc. bids. The Ethics Commission concluded, however, that Broussard Brothers had violated Section 1113 B of the Code by having subcontracted with Coastal Contractors, Inc. on a Harbor Commission project, and that Mr. Broussard had violated Section 1111 C(2)(d) of the Code by having received compensation for services he rendered to Broussard Brothers after it had entered into a contractual, business, and financial relationship with his agency, the Harbor Commission.
Counsel for the Broussards, the appellants, has made ten "Assignments of Error", which can be summarized in five issues, as follows:
I.
Did the Commission Err in Refusing to Disclose To Appellants the Names of Persons Known to the Commission, But Unknown to Appellants, Who Had Information About the Alleged Violations of the Code of Ethics by Appellants?
Counsel for appellants requested all discoverable documents. The record discloses that the requested information was provided to appellants, including names of all persons shown to have been interviewed by the Ethics Commission relative to the matter.
However, during the course of their appearance before the Ethics Commission, the appellants further requested the particular correspondence which had led to the Commission's involvement in this matter. This request was denied. This denial forms the basis of this issue.
Section 1141 D(12) of the Ethics Code provides, as follows:
The records of each ethics body prepared or obtained in connection with investigations and private hearings conducted by the ethics body, including all extracts of minutes and resolutions adopted in connection therewith, shall be deemed confidential and privileged, except that such records shall be available to each member of the ethics body upon request. Except as provided in this Paragraph and in R.S. 42:1111(E)(2)(c), all records, including the results and conclusions reached in connection with any investigation *1232 or hearing, shall be public. (Emphasis added).
Section 1141 D(12) generally has the effect of making all records relative to Ethics Commission investigatory proceedings confidential, and explicitly provides that these records shall be made available only to members of the ethics body.
In this connection the Commission is required to proceed by investigating such information confidentially. Hence, allegations of violations cannot be made a matter of public record until the Ethics Commission has determined, pursuant to Section 1141B, that there is sufficient information to warrant that the matter be considered at a public hearing. Complaints, whether signed or anonymous, which do not meet the requirements of Section 1141 A do not lead to public disclosure of their having been made, or to any hearing unless investigation shows there is some substance to them.
The appellants further argue that the Commission should have provided this information because it is required by the Ethics Code to enact discovery rules consistent with those used in civil proceedings, and that this evidence would have been discoverable in those proceedings. There is no merit to this argument. Section 1141 D(2), contains a limitation that discovery rules of the Commission shall be consistent with those used in civil proceedings "to the extent and in the manner appropriate to its proceedings." It is appropriate to its proceedings that records of investigation proceedings be kept confidential.
The appellants also argue that they have been prejudiced by the Commission's refusal to provide them with the correspondence in question. There is no merit in this argument. The Commission's resolution of November 23, 1982 specified both the conduct which was the subject of its inquiry and the relevant sections of the Ethics Code. In this connection, the appellants complained that one witness whose testimony led to the investigation and to the subsequent public hearing was not subject to cross-examination by them. This is not a basis for complaint. The appellants were provided with the names of all persons interviewed by the Ethics Commission. It is not required to use all persons it interviews as witnesses as long as it does not deprive the accused of his right to discovery and his use of such persons as his witnesses in the case, if he so chooses. The appellants chose not to depose or use the persons in question as witnesses; such choice was their prerogative.
II
Did the Commission Err by Investigating a Public Servant and Other Persons Without Adoption of a Formal Resolution Authorizing Said Investigation?
The issue raised by the appellants is whether the Ethics Commission has the legal authority to conduct "fact-finding," as provided in its Rules.
Section 1134 of the Ethics Code provides in pertinent part as follows:
(1) Each ethics body may adopt, amend, repeal, and enforce rules and regulations to carry out the provisions and purposes of this Chapter within its jurisdiction.
Rule 2.2 of the Ethics Commission's Rules provides as follows:
2.2 Fact-finding.
The Commission may refer to fact-finding any matter warranting Commission consideration including any request for an advisory opinion. When the fact-finding concerns a particular individual or person, the individual or person shall be given written notice prior to commencement of said fact-finding.
The Ethics Commission is authorized by Section 1141 A(2) of the Code, to investigate any matter which comes to its attention which may be a violation of the Ethics Code within its jurisdiction. The Commission in the regular course of business receives correspondence, anonymous and signed, containing information relative to various situations and charges against public *1233 officials, and complaints of conflicts of interest.
Such complaints or information must necessarily be investigated. As part of its investigatory proceedings, the Commission routinely conducts a "fact-finding" in order to verify preliminary the validity of the information or complaint.
As stated, the "fact-finding procedure" was adopted by Rule pursuant to the Code's provisions concerning rule-making: this procedure is designed to protect public officials and other persons from unwarranted investigations. Moreover, in the instant case, the appellants have not shown how this preliminary "fact-finding" prior to a formal investigation has prejudiced them or deprived them of any rights. There is no merit in this assignment of error.
III.
Does the Code of Ethics Apply to Someone Who is Neither a Public Officer Nor Employee?
The issue of whether persons who are not public officers or public employees are subject to the provisions of the Code of Governmental Ethics was addressed by this Court recently in Anzelmo v. Louisiana Commission on Ethics for Public Employees, 435 So.2d 1082 (La.App. 1st Cir. 1983); and we decided that the Code was also applicable to persons other than public servants. One of the issues presented in the Anzelmo case was whether immediate family members of a public servant were subject to Commission jurisdiction with respect to violations of the Ethics Code. In the Anzelmo case, the issue was the application of Section 1113 A of the Code. In the instant case, the issue is the application of Section 1113 B. These provisions provide as follows:
A. No public servant, excluding any legislator and any appointed member of any board or commission, member of such public servant's immediate family, or legal entity in which he has a controlling interest shall bid on or enter into any contract, subcontract, or other transaction which is under the supervision or jurisdiction of the agency of such public servant.
B. Other than a legislator, no appointed member of any board or commission, member of his immediate family, or legal entity in which he has an economic interest shall bid on or enter into or be in any way interested in any contract, subcontract, or other transaction which is under the supervision or jurisdiction of the agency of such appointed member.
In each of these subsections the prohibitions apply not only to public servants, but also to public servants' family members and to legal entities in which they have an interest. In the Anzelmo case, this Court concluded that because the constitutional mandate of Article X, Section 21 of the 1974 Constitution directing the Legislature to enact a code of ethics did not prohibit the Legislature from including "other persons" in the ambit of the Code, the Legislature could constitutionally include such persons.
The Anzelmo Court held that the prohibitions contained in Section 1113 also apply to persons who are not themselves public servants. The Anzelmo case is controlling on this particular issue.
IV.
Did the Commission Commit Manifest Error in its Conclusion that Appellants Violated the Provisions of the Code of Governmental Ethics?
Section 1113 B provides, in pertinent part, that no legal entity in which an appointed member of any board or commission has an economic interest "shall bid on or enter into or be in any way interested in any contract, subcontract, or other transaction which is under the supervision or jurisdiction of the agency of such appointed member."
The gist of the appellants' argument on this issue is that Section 1113 B can be construed to prohibit a great number of activities which are not reasonably related to the legislative goal in adopting the Code *1234 of Ethics. There is no merit in this argument. The various prohibitions contained in Section 1113 B, which generally addresses the question of public servants, their families, and their companies entering into business transactions with the public servant's agency, are essential to the Legislature's goals in enacting the Code. These goals are explicitly stated in Section 1101 B of the Code, as follows:
It is essential to the proper operation of democratic government that elected officials and public employees be independent and impartial; that governmental decisions and policy be made in the proper channel of the governmental structure; that public office and employment not be used for private gain other than the remuneration provided by law; and that there be public confidence in the integrity of government. The attainment of one or more of these ends is impaired when a conflict exists between the private interests of an elected official or a public employee and his duties as such. The public interest, therefore, requires that the law protect against such conflicts of interest and that it establish appropriate ethical standards with respect to the conduct of elected officials and public employees without creating unnecessary barriers to public service. It is the purpose of this Chapter to implement these policies and objectives.
Examination of this provision of the Ethics Code makes clear that the Code was designed not only to prevent actual abuse and corruption in public office, but also to protect the appearance of integrity of governmental agencies and processes. A prohibition against public servants, their family members, and their companies engaging in business activities under the authority of the public servants' agencies is germane to the realization of the Legislature's goals.
Not only is Section 1113 B consistent with the above goals, but its application by the Ethics Commission with respect to the instant case is consistent with these goals. Mr. Broussard is the President, Chairman of the Board, and the owner of 44.6% of Broussard Brothers, Inc. The Ethics Commission's conclusion that Section 1113 B prohibits Broussard Brothers from entering into subcontracts with the Harbor Commission due to his ownership interest in Broussard Brothers is not only the correct application of Section 1113 B, but is clearly in conformity with the policy and goals of the Ethics Code.
The appellants suggest a violation of Section 1113 B should be found only if the economic interest in the contract occurs at a time at which the board member could influence the action of the public body with respect to that contract as a quid pro quo for the profit to the business entity in which he is interested. The Code does not contain such a limiting provision. There is no merit to this argument.
The amount of compensation paid to Broussard Brothers by Coastal Contractors was dependent to a certain extent on the amount of materials excavated by Broussard Brothers, and this amount was determined by the Harbor Commission's project engineer. In other words, the amount of compensation to be paid to Broussard Brothers was determined by the decision of an employee of the Harbor Commission. This situation is not without the potential for abuse or the appearance of a possible conflict of interest.
Moreover, during the time that Broussard Brothers, Inc. was performing work on the subcontract with Coastal Contractors, N.R. Broussard, Sr. received compensation for services he rendered to Broussard Brothers, Inc. in the amount of $14,300, gross, per month. In effect, the Broussards argue that the absence of evidence of actual abuse and corruption requires the Commission to conclude that a violation of the Code did not occur.
The structure of the Ethics Code as an anti-conflict of interest statute (as opposed to being only an anti-abuse and anti-corruption statute) was clearly intended to result in prohibitions against certain activities whether or not actual abuse or corruption can be demonstrated. Inherent *1235 in the conflict of interest approach to the issue of public ethics is the recognition that proof of actual abuse and corruption is difficult at best, and that the prevention of general classes of situations presenting a conflict of interest is the best means of avoiding actual corruption and abuse.
On this point, the appellants argue that the Ethics Commission's conclusion that Mr. Broussard had violated Section 1111 C(2)(d) was in error since it concluded that his receipt of his usual and customary compensation for services from the corporation in which he is a shareholder was a violation of the Ethics Code.
Essentially, Section 1111 C(2)(d) prohibits public servants from performing services for compensation if the services are performed for, or the compensation is received from, any person from whom the public servant would be prohibited from receiving a gift. Under Section 1115 A of the Code, public servants are prohibited from receiving a gift of a thing of economic value from any person who has or seeks a contractual or other business or financial relationship with the public servant's agency. Thus, Section 1111 C(2)(d) prohibits public servants from performing work where the work is performed for, or paid for, by such persons.
When a company with which a public servant has had a long-standing employment relationship decides to enter into a contractual relationship with the public servant's agency, the mere fact that the public servant has previously maintained an employment relationship with that person does not mean that he can continue in that relationship, despite the provisions of the Code.
Mr. Broussard's argument is that he was simply doing something he had always done by receiving compensation from Broussard Brothers, and that to do something he had customarily done should not be a violation. However, circumstances had changed. Broussard Brothers decided to do something it had not done previously; that is, to enter into a subcontract on a Harbor Commission project. Additionally, Mr. Broussard admitted that he knew about this subcontract before it was actually entered into between Broussard Brothers and Coastal Contractors. It was this new and significant relationship between Broussard Brothers and the Harbor Commission that made Mr. Broussard's receipt of compensation from Broussard Brothers a violation of the Code. Through the receipt of this compensation, Broussard violated Section 1111 C(2)(d) of the Code.
Even if we were to agree that Mr. Broussard's continued receipt of his salary from a company which was performing a subcontract for Broussard's governmental entity was not a wrongdoing, his activity does constitute a conflict of interest. The wrongdoing does not have to actually occur for a conflict of interest to exist. A conflict of interest is a situation which would require a public official to serve two masters, presenting a potential of wrongdoing. The public official may not have done any wrong, but a conflict of interest may put him in danger of doing wrong. Glazer v. Commission on Ethics for Public Employees, 431 So.2d 752 (La.1983).
V.
Is the Code of Governmental Ethics Unconstitutional In its Composition, and Particularly in its Application?
The appellants further contend that the Ethics Code is unconstitutional. Their first point relates to the alleged "double standard" established by the Code. Essentially, this argument refers to the fact that the Code makes various distinctions, in its provisions and procedures, between "elected officials" and "other public employees." The appellants claim that these distinctions suffer from a "lack of rational or sound legal reasoning," and that they are thus in violation of the due process and equal protection clauses of the state and federal constitutions. The distinction of which the appellants particularly complain is the requirement that investigations concerning elected officials commence only in response to a sworn complaint, while investigations *1236 concerning public employees may commence upon the Commission's own motion.
To maintain an attack against the distinction drawn by the Ethics Code with respect to the initiation of investigations of elected officials, as opposed to other public servants, the appellants must show that the distinction is without reason. There are important reasons for distinguishing between elected officials and other public servants with respect to the manner in which complaints are initiated. Because of elected officials' visibility, there exists an opportunity for large numbers of persons outside of their offices to have knowledge of information relative to possible violations of the Code. On the other hand, the actions of public employees and appointed officials are more likely to be subject of the knowledge of only a small circle of interested or affected persons who are likely to fear the consequences of filing a complaint. Because of elected officials' special vulnerability to attacks against character and personal ethics, it is not unreasonable to require that a person making such charges against such a person be willing to do so in a sworn complaint. Thus, the distinction drawn between elected officials and other public servants with respect to the initiation of ethics body investigations is reasonable and with good reason.
The appellants also contend that the Ethics Code is unconstitutional in that it arbitrarily defines "things of economic value" to include the usual and ordinary salary of a corporate employee a "gift" so that such application violates Section 1111 C(2)(d) of the Code, all in derogation of due process, equal protection and the property rights of an individual under the Constitution of Louisiana and the United States.
The Ethics Code does not make the usual and ordinary salary of a corporate employee as a "gift." Rather, Section 1115 of the Code prohibits public servants from receiving gifts from certain classes of persons. Section 1111 C(2)(d) of the Code prohibits public servants from performing services for compensation if it is received from certain classes of persons. The classes of persons with respect to which the prohibition exists are the same in each case, and Section 1111 C(2)(d) of the Code refers to those classes in Section 1115 of the Code by making reference to that section of the Code. This contention is meritless.
The next constitutionality issue urged by the appellants is that the Ethics Code as a whole in its composition and application is in derogation of various constitutional provisions because of the procedures it contains. We find that this Court has answered this argument contrary to appellants' position in Commission on Ethics for Public Employees v. IT Corporation, 423 So.2d 695 (La.App. 1st Cir.1982). The other constitutional arguments made by appellants have been considered and found to be totally without merit.
For the foregoing reasons, the order of the Commission is affirmed at appellants' cost.
AFFIRMED.
NOTES
[*] Judge John S. Covington of the 19th Judicial District Court has been duly elected to this court; that term begins on January 1, 1985. In the interim, the Supreme Court has appointed him to this court pro tempore.
[1] The bracketed words are contained in the charges.