ALFORD, Judge.
Peter Schneckenburger, III (Schnecken-burger) appeals a decision of the Commission on Ethics for Public Employees (the Commission), which , held that he violated LSA-R.S. 42:llll(C)(2)(d) and 42:1113(A) of the Code of Ethics for Governmental Employees.
FACTS
Schneckenburger has been the part-time Director of Inspection & Code Enforcement for the city of Harahan, Louisiana, since 1980. This is an appointed position whose duties include supervising “field inspections of buildings and structures for safe construction and condition, and for compliance with city building code and zoning ordinances.”
Around May of 1984, Ms. Bennie Jay Zahn, the owner of a corner lot of immovable property measuring 30' x 120' in Hara-han, contacted Schneckenburger about having two trees removed from adjacent city-owned property. The two also discussed *791 the sale of this lot and verbally agreed on a purchase price of $7,500.00. Ms. Zahn testified at the public hearing held in November of 1985 that she had first mentioned $10,000.00 but accepted $7,500.00 to allow for the price of the trees’ removal. Ms. Zahn subsequently received an offer of $10,000.00 from Mr. Peter Fabacher, an electrical contractor and builder, but she refused his offer since she felt a moral obligation to honor her verbal agreement with Schneckenburger. She was fully aware that the verbal agreement was not legally binding.
The act of cash sale to Schneckenburger was signed August 16, 1984. Around the end of October or beginning of November, Schneckenburger put a “For Sale” sign in the yard solely to invite offers for the purpose of appraising the property and applying for a loan. The sign was removed shortly afterward. Schneckenburger bought this lot with the intention of building a house for his daughter, who was engaged to be married. A 14½' x 80' single family dwelling could have been built on this lot in accordance with the applicable zoning ordinance. On November 1, 1984, Schneckenburger applied to the Department of Regulatory Inspections for a 2' side yard variance on the interior side lot line and a 5V2' side yard variance on the street side lot line, so as to enable him to build a 22'x80' house for his daughter. He appeared before the Harahan Board of Appeals and stated that without this variance the narrowness of the lot would not permit a house of comparable size to the neighborhood to be built. Mr. Hilton J. Duvernay, plan reviewer and building inspector for the regulatory department, testified that a 30' corner lot is not a normal situation in a residential zoning property.
Schneckenburger’s request was granted by the Board of Appeals at its regular meeting on November 28, 1984, along with at least two other variances applied for on other properties by other applicants. The Board is required by law to give prior notice of its meetings and open them to the public. Several neighbors in the area attended the meeting and objected to Schneckenburger’s variance. The Board is authorized by the zoning ordinance of the city of Harahan to grant a variance “where exceptional and peculiar hardship would be caused by enforcement of the regulations in this Ordinance and where such variance would not substantially derogate from the. intent of this Ordinance but not otherwise.” The chairman of the Board of Appeals testified that “[t]hat particular lot deserved the variance.” Another member of the Board testified that Schneckenburger used no undue influence to obtain the variance, and that he would have granted the variance to anyone else under the same circumstances, i.e., with the same hardship. Schneckenburger testified that he is not involved in the Board’s deliberations and that an applicant may request a variance without contacting him personally.
Three days after Schneckenburger obtained the variance, he surprised his daughter with his plans to build the house for her. She declined his gesture, stating she did not like the neighborhood and wished to live in an apartment. Schneckenburger then contacted Mr. Fabacher, who was hired to build the house, in order to cancel the plans. Mr. Fabacher offered to buy the property from Schneckenburger and planned to build the same house for himself. The two signed a purchase agreement on December 7, 1984, for the price of $18,000.00 and consummated the sale on March 15, 1985. Mr. Don Garland, survey- or of the property, testified that Ms. Zahn’s price was too low and that any buildable lot in Harahan would be worth $18,000.00 to $20,000.00, even without such a variance.
Mr. Fabacher and his business partner, Steven Richard, subsequently obtained a building permit that included the variance from Mr. Duvernay in the regulatory department, authorizing the construction of a 22' x 80' residence on the lot. The Board of Appeals had been under the impression that variances were not transferable on the same lot from one owner to another, until the Attorney General of the State of Louisiana issued Opinion Number 85-316 on April 18, 1985, stating that a new owner may execute the same variance when the *792 conditions leading to the granting of the variance remain the same.
After an investigative hearing and meeting of the Louisiana State Board of Ethics were held, Schneckenburger was cited for two violations of the Code of Ethics for Governmental Employees. He was found not to have violated LSA-R.S. 42:1112(A). He was fined $2,000.00 and has taken this appeal.
LAW
La. Const, of 1974, Art. X, § 21 directed the legislature to enact a code of ethics for all officials and employees of the state and its political subdivisions and to create one or more boards to administer the code. Pursuant to this mandate, the legislature enacted the Code of Ethics for Governmental Employees. LSA-R.S.:42:1101 et seq. Among its multiple policy objectives are impartiality, fairness and equality of treatment toward those dealing with government; assurance that decisions of public importance will not be influenced by private considerations; maintenance of public confidence in government (wherein enters the matter of appearances); and prevention of use of public office for private gain. LSA-R.S. 42:1101(B); Glazer v. Commission on Ethics for Public Employees, 431 So.2d 752 (La.1983).
The two statutes Schneckenburger is accused of violating are LSA-R.S. 42:1111(C)(2)(d) and 42:1113(A). LSA-R.S. 42:1111(C)(2)(d) provides as follows:
(2) No public servant and no legal entity in which the public servant exercises control or owns an interest in excess of twenty-five percent, shall receive any thing of economic value for or in consideration of services rendered, or to be rendered, to or for any person during his public service unless such services are:
(d) Neither performed for nor compensated by any person from whom such public servant would be prohibited by R.S. 42:1115(A)(1) or (B) from receiving a gift.[1]
In other words, LSA-R.S. 42:1111(C)(2)(d) prohibits a person from drawing a salary for his services to a company, if that company is doing business with the public servant’s agency. In re Beychok, 484 So.2d 912 (La.App. 1st Cir.1986), reversed on other grounds, 495 So.2d 1278 (La.1986). Put another way, this section prohibits a public servant from performing work where the work is performed for, or paid for, by persons seeking a business relationship with his agency. Broussard v. Commission on Ethics for Public Employees, 461 So.2d 1227 (La.App. 1st Cir.1984).
Although LSA-R.S. 42:1102(24) defines “service” to include the sale of immovable property, Schneckenburger did not receive a “salary” nor did he “perform work” in selling the property to a company doing business with his agency. He merely paid and received a purchase price for a piece of property just as any other citizen would be entitled to do. The discrepancy between his buying and selling price was perhaps due to Ms. Zahn’s lack of business judgment in failing to obtain the highest price she could for her lot. The evidence fails to show that Schneckenburger received anything more than an honest profit in negotiating the property. We cannot conclude that Schneckenburger received compensation for services rendered to Mr. Fabacher whereby he knew or reasonably should have known that Mr. Fabacher may *793 have been seeking to obtain a business relationship with the regulatory department. A contrary holding would result in a blanket prohibition against Schneckenbur-ger from ever buying or selling property with any person, since anyone seeking to obtain a building permit, variance, or engage in other property transactions is required to conduct business with the regulatory department.
As for the second alleged violation, LSA-R.S. 42:1113(A) provides:
§ 1H3.
A. No public servant, excluding any legislator and any appointed member of any board or commission and any member of a governing authority of a parish with a population of ten thousand or less, or member of such a public servant’s immediate family, or legal entity in which he has a controlling interest shall bid on or enter into any contract, subcontract, or other transaction that is under the supervision or jurisdiction of the agency of such public servant.
The policy behind prohibiting a public servant from entering into any transaction that is under the supervision or jurisdiction of his agency is to prevent a real and substantial conflict of interest. A conflict of interest is a situation which would require an official to serve two masters, presenting a potential, rather than an actuality, of wrongdoing. Glazer, 431 So.2d at 756. However, there is no requirement in the instant case that Schnecken-burger must personally or directly participate in every application for a building permit or variance submitted to his office. There is no evidence of any undue influence by Schneckenburger on the Board of Appeals in approving his variance. Mr. Duvernay is the one who issued Mr. Fa-bacher a building permit with the transferable variance. It is apparent that granting such variances and permits under similar circumstances is a “routine and mechanical thing.” See Hill v. Commission on Ethics for Public Employees, 453 So.2d 558 (La.1984). There is no indication that Schneck-enburger’s part-time (four hours a week) position of supervising the regulatory department created any impropriety on his part. 453 So.2d at 561.
The findings and conclusions of the Commission are therefore insufficient to support a violation of the Code of Ethics. The evidence does not support a violation of the spirit of the Code. The Commission found only a remote possibility of a conflict of interest which it could not pinpoint or document. 453 So.2d at 563.
Since the Commission incorrectly concluded that Peter Schneckenburger was in violation of the Code of Governmental Ethics, it is unnecessary to address the constitutional questions suggested by counsel. The decision of the Commission on Ethics for Public Employees is hereby reversed and set aside. Costs in the amount of $60.00 are assessed against the Commission.
REVERSED.
LANIER, J., concurs in the result.

. LSA-R.S. 42:1115(A)(1) and (B) provide as follows:
A. No public servant shall solicit or accept, directly or indirectly, any thing of economic value as a gift or gratuity from any person or from any officer, director, agent, or employee of such person, if such public servant knows or reasonably should know that such person:
(1) Has or is seeking to obtain contractual or other business or financial relationships with the public servant’s agency, or
[[Image here]]
B. No public employee shall solicit or accept, directly or indirectly, anything of economic value as a gift or gratuity from any person or from any officer, director, agent, or employee of such person, if such public employee knows or reasonably should know that such person:
(1) Conducts operations or activities which are regulated by the public employee’s agency.
(2) Has interests which may be substantially affected by the performance or nonperformance of the public employee’s official duty.