DIXON, Chief Justice.
The issue here is whether the Code of Ethics for Governmental Employees was violated when the Director of Inspection and Code Enforcement for the City of Har-ahan bought a city lot, obtained a zoning variance on the lot, and later sold the property at a profit to a contractor/builder, who obtained a permit to build including the variance.
*498 The Commission on Ethics for Public Employees held that Peter Schneckenburger violated R.S. 42:llll(C)(2)(d) and R.S. 42:1113(A) of the Code of Ethics for Governmental Employees and fined him $1000 for each of the two violations. The court of appeal reversed. In re Peter Schneckenburger, III, 509 So.2d 790 (La.App. 1st Cir.1987). We reverse in part and affirm in part.
Schneckenburger has been the Regulatory Director or the Director of Inspection and Code Enforcement for the City of Har-ahan since 1980. This is an appointed position for which Schneckenburger works four hours a week in the evening. His duties include supervising “field inspections of buildings and structures for safe construction and condition, and for compliance with city building code and zoning ordinances.” Employees under his supervision grant permits and perform inspections in connection with those permits.
On August 16, 1984 Schneckenburger purchased Lot 155, Sq. N-2, Harahan City Subdivision from Bennie Zahn and other members of her family for $7500. Prior to the sale Mrs. Zahn had the lot surveyed by Don Garland, a surveyor, in preparation for removal of decayed trees which had been the subject of neighborhood complaints. Mrs. Zahn had been administering the property, which was part of an inheritance, and told Garland she was interested in selling the property for $8000 to $10,000. Garland told Zahn the lot was worth from $18,000 to $20,000. In passing, Garland mentioned to Schneckenburger and to Steven Richard, a local builder, that Zahn was interested in selling the lot. Schneckenburger bought the property to build a house for his daughter, who was to be married the following spring. The $7500 price was arrived at by deducting from Zahn’s $10,000 price the expense necessary to cut and remove the decaying trees.
After Schneckenburger’s verbal offer, but prior to the sale, Zahn received an offer from Richard to buy the lot for $15,000, but Zahn testified she felt a “moral,” not a legal, obligation to sell to Schneckenbur-ger.
For a short time at the end of October or beginning of November, Schneckenburger put a “For Sale” sign up at the lot to invite offers in order to arrive at the value of the property for purposes of obtaining a bank loan for building. Schneckenburger also applied for a variance from the Harahan Appeals Board. The variance was granted on November 28, 1984 over the objections of several neighboring property owners. The lot was a 30’ by 120’ corner lot on which a 14V2' x 80' single family dwelling could have been built in accordance with the zoning laws. The variance allowed a 22' x 80' house to be built on the lot.
Three days after getting the variance Schneckenburger took his daughter to see the lot and told her of his plan. She refused the offer, saying she did not like the area and preferred to live in an apartment.
The following week Schneckenburger contacted Peter Fabacher, an electrical contractor and builder whom he had asked to build and draw plans for the house. Schneckenburger told Fabacher not to proceed any further with the plans. Fabacher and Steven Richard were partners, and Richard was the one who was actually doing the work on the plans. At this time Fabacher offered to buy the lot. A purchase agreement was signed on December 7, 1984, and the sale to Fabacher was consummated on March 15, 1985 for a sale price of $18,000.
Fabacher and Richard obtained a building permit which included the variance. The permit was obtained from Hilton J. Duvernay, a plan reviewer and building inspector for the regulatory department. Members of the Board of Appeals testified that they had been under the impression that variances were not transferable on the same lot from one owner to another, until the Attorney General of the State of Louisiana issued Opinion Number 85-316 on April 18, 1985 stating that a new owner may execute the same variance when the conditions leading to the granting of the variance remain the same. Duvernay also testified that it was his impression that a variance was granted on the lot, not to the person and was therefore transferable. *499 Schneckenburger received a letter informing him that the variance had been granted. Although the letters which were sent out up to and including August, 1984 contained a phrase informing the landowner that the variances were not transferable, the letter which Schneckenburger received, and the letters after this time, did not include this non-transferability information.
After an investigative hearing, the Louisiana State Board of Ethics found Sehneck-enburger violated R.S. 42:llll(C)(2)(d) and 42:1113(A). He was fined $1000 for each of the two violations.
The court of appeal reversed the finding of the Commission on Ethics. On the R.S. 42:llll(C)(2)(d) violation the court found no “service” had been performed since no “salary” was received and no work was performed in selling the property to a company doing business with his agency. The court of appeal also held that the evidence failed to show that Schneckenburger “received anything more than an honest profit in negotiating the property.” The court went on to say that Schneckenburger did not receive compensation for services rendered to Fabacher “whereby he knew or reasonably should have known that Mr. Fabacher may have been seeking to obtain a business relationship with the regulatory department.” On the R.S. 42:1113(A) violation the court found no indication that Schneckenburger personally or directly participated in the granting of a building permit with the transferable variance to Fabacher and no evidence that he influenced the Board of Appeals in approving his variance. “There is no indication that Schneckenburger’s part-time (four hours a week) position of supervising the regulatory department created any impropriety., on his part.”
R.S. 42:llll(C)(2)(d) provides as follows: “(2) No public servant and no legal entity in which the public servant exercises control or owns an interest in excess of twenty-five percent, shall receive any thing of economic value for or in consideration of services rendered, or to be rendered, to or for any person during his public service unless such services are: (d) Neither performed for nor compensated by any person from whom such public servant would be prohibited by R.S. 42:1115(A)(1) or (B) from receiving a gift.”[1]
Schneckenburger is prohibited by this section of the code from receiving anything of economic value for services rendered to a person from whom he would be prohibited from receiving a gift, and under R.S. 42:1102(24) “services” is defined to include the sale of immovable property. Section 1115(B) of the code (R.S. 42:1115(B)) prohibits Schneckenburger from receiving a gift from a person who is regulated by his agency or who has interests that may be substantially affected by the performance or nonperformance of his official duties. Schneckenburger sold a lot to Fabacher and Richard, who are contractors and developers. In order to build a house on the lot, permits were obtained by Fabacher and Richard from the department of which Schneckenburger is the director. Inspections in conjunction with those permits were also carried out by .the Regulatory Department. Schneckenburger, as director of that department, had the ultimate authority over the issuance of the permits. Thus, as a contractor and also because of his plans to construct a house on the property purchased from Schneckenburger, Fa-bacher was subject to the regulation of Schneckenburger’s agency, the Regulatory Department, and had interests which may have been substantially affected by Schneckenburger’s performance or nonperformance of his official duties as Regulatory Director. Therefore, Schneckenbur-ger was prohibited by R.S. 42:llll(C)(2)(d) *500 of the code from receiving any thing of economic value (the purchase price of the property) from Peter Fabacher in consideration of the sale of immovable property.
The fact that Schneckenburger made a profit on the property does not indicate that there was “actual corruption” involved in the sale. See, In re Sea Shell, Inc., 509 So.2d 90 (La.App. 1st Cir.1987). There is evidence that Zahn knew what she could get for the lot, and in fact Richard himself offered to pay Zahn $15,000 for the lot without the variance, at the same time Schneckenburger was involved in negotiations with Zahn. Therefore, the price later paid by Fabacher to Schneckenburger was in line with the going value of the property and does not indicate that either the obtaining of the permit or the variance figured into the price paid.
However, in Glazer v. Commission on Ethics for Public Employees, 431 So.2d 752 (La.1983), this court explained that the primary objective of the Code of Ethics for Governmental Employees is not to apprehend and punish persons guilty of public wrongdoing, but to prevent public officers and employees from becoming involved in conflicts of interest. In that case we also said that R.S. 42:llll(C)(2)(d), which prohibits public servants from receiving any thing of economic value for or in consideration of services rendered, must be read as prohibiting conflicts of interest in ordinary as well as in special business deals and hence as prohibiting armslength transactions in any conflict of interest situation. We explained that a “conflict of interest” as envisioned by the code is a situation which would require an official to serve two masters, presenting a potential, rather than actual wrongdoing.
On the issue of the R.S. 42:llll(C)(2)(d) charge, therefore, we find that there was a violation which made Schneckenburger subject to the fine imposed on him by the Commission on Ethics. We reverse the court of appeal on this issue and reinstate the finding of the commission.
R.S. 42:1113(A) provides as follows:
“A. No public servant, excluding any legislator and any appointed member of any board or commission and any member of a governing authority of a parish with a population of ten thousand or less, or member of such a public servant’s immediate family, or legal entity in which he has a controlling interest shall bid on or enter into any contract, subcontract, or other, transaction that is under the supervision or jurisdiction of the agency of such public servant.”
Under this section of the code, the commission found Schneckenburger violated the code by entering into a transaction— obtaining a zoning variance — that was under the supervision and jurisdiction of his agency, the Regulatory Department.
Counsel for the commission admitted during oral arguments that it was a close factual issue as to whether or not the Board of Appeals which granted the variance was “under the supervision or jurisdiction of the agency” of which Schnecken-burger was the director. We find that the Board of Appeals was not part of the agency of which Schneckenburger was director and, therefore, reverse on this issue.
Mayor Carlo Ferrara testified that Schneckenburger, who was appointed by the Mayor, had no duties to or control over the Board of Appeals which is a separate entity from the Regulatory Department over which Schneckenburger is director. He plays no part in the decisions made by the Board of Appeals, and he is not assigned as a consultant to the board. Schneckenburger’s department simply sees that variances which are granted by the board are carried out after the fact. Although the applications for variances have a caption at the top which reads “Department of Regulatory Inspections” and a phone number which is the same as that used to reach Schneckenburger’s office, the Mayor explained that this is so because the phone number is simply a direct line to the secretary who works for several departments including the Sewerage Department, the Appeals Board and the Regulatory Department. This secretary places people with applications for variances on the Appeals Board agenda. Schneckenburger does not have anything to do with the handling or processing of the applications for variances. The Appeals Board can also be reached by calling the general phone number listed for the city hall.
Because the Board of Appeals was not Schneckenburger’s agency, he did not transact business with an agency under his supervision or jurisdiction. For reasons different from those of the court of appeal, we affirm its judgment reversing the commission’s finding on claimed violation of R.S. 42:1113(A). Furthermore, for reasons *501 previously stated, we reverse the court of appeal on the issue of the R.S. 42:llll(C)(2)(d) violation and reinstate the finding of the Commission on Ethics imposing a fine of $1000 on Peter Schneckenbur-ger III. Costs are divided equally between the parties.
DENNIS, J., concurs and dissents in part and assigns reasons.
MARCUS and COLE, JJ., concur in part and dissent in part, for the reasons assigned by DENNIS, J.

. R.S. 42:1115 provides as follows:
"A. No public servant shall solicit or accept, directly or indirectly, any thing of economic value as a gift or gratuity from any person or from any officer, director, agent, or employee of such person, if such public servant knows or reasonably should know that such person:
(1) Has or is seeking to obtain contractual or other business or financial relationships with the public servant’s agency, or
(2) Is seeking, for compensation, to influence the passage or defeat of legislation by the public servant’s agency.
B. No public employee shall solicit or accept, directly or indirectly, anything of economic value as a gift or gratuity from any person or from any officer, director, agent, or employee of such person, if such public employee knows or reasonably should know that such person:
(1) Conducts operations or activities which are regulated by the public employee’s agency.
(2) Has interests which may be substantially affected by the performance or nonperformance of the public employee’s official duty.”