LANIER, Judge.
This action is an application for supervisory relief by an elected public servant from an adverse advisory opinion rendered by the Board of Ethics for Elected Officials (Board). La. Const. of 1974, art. V, § 10; La.R.S. 42:1142(A); Board of Commissioners, Fifth Louisiana Levee District v. Commission on Ethics for Public Employees, 484 So.2d 845 (La.App. 1st Cir.), writ denied, 487 So.2d 440 (La.1986).
FACTS
The relator, Barry D. Bagert, is a member of the St. Tammany Parish Police Jury (Parish). In 1988, Bagert acquired a controlling interest in Jade Landscapes, Inc. (Jade), a corporation engaged in grass cutting and landscaping as a business. Jade had a contract to perform grass cutting services for the Slidell Memorial Hospital which was operated by St. Tammany Parish Hospital Service District No. 2 (District).
The District was created by the legislative branch of the State of Louisiana in Act 180 of 1984 (Act). La. Const, of 1974, art. III, § 1(A) and art. YI, § 19. It was not created by the Parish pursuant to the authority of La.R.S. 46:1051 et seq.[1] The District is governed by a board of seven commissioners. The Parish appoints five commissioners to represent specified geographical areas and it appoints one commissioner to represent the City of Slidell from a nomination submitted by the governing authority of the City of Slidell. These six commissioners then appoint the seventh commissioner from the membership of the Slidell Memorial Hospital medical staff. The Parish may revoke the appointment of any commissioner for explicitly stated cause upon a majority vote of a quorum of its membership. The status and powers of the District are set forth in Section 8(A) of the Act as follows:
*1266 Section 8. Corporate status and powers of each district; evidence of acts and proceedings.
A. Each hospital service district created in this Act shall constitute a body corporate in law with all the powers of a corporation, shall have perpetual existence, shall have the power and right to incur debts and contract obligations, to sue and be sued, and to do and perform any and all acts in its corporate capacity and its corporate name necessary and proper for the carrying out of the objects and purposes for which the hospital service district was created. Such hospital service district shall have the right and power of expropriating property for the purpose of acquiring land for any purpose that it may find necessary in the operation of a hospital service district and may acquire by donation or purchase, any existing hospital facility in the district. It shall also have the power and authority to acquire any and all necessary equipment and buildings for the purpose of performing the objects for which it is formed, and shall own all sites and physical facilities, which are acquired either by donation, purchase, expropriation, exchange, or otherwise, in full ownership.
In addition, the Act gives the District the powers to levy taxes and issue bonds. Finally, Section 12 of the Act provides that “This Act, being intended to carry out a function of the state to protect the health and welfare of the inhabitants of the state to be affected thereby, shall be liberally construed by the courts to effect its purposes.” (Emphasis added).
By letter dated November 13, 1989, Ba-gert asked the Board for an advisory opinion on whether or not he was in violation of the Code of Governmental Ethics, La.R.S. 42:1101 et seq. On March 20, 1990, the Board responded in a letter which advised that “the future rendition of such services is prohibited by Section 1113 A of the Code of Governmental Ethics.” La.R.S. 42:1113(A) provides, in pertinent part, as follows:
No public servant ... or legal entity in which he has a controlling interest shall bid on or enter into any contract, subcontract, or other transaction that is under the supervision or jurisdiction of the agency of such public servant. (Emphasis added)
The definitions of “agency”, “controlling interest” and “public servant” for purposes of La.R.S. 42:1113(A) are found in La.R.S. 42:1102(2)(f), (8) and (19). Bagert requested that the Board reconsider its opinion.[2] On March 28, 1990, the Board took this request under advisement. On August 17, 1990, the Board rendered an opinion on reconsideration that “concluded that Section 1113 A of the Code of Ethics would prohibit Mr. Bagert as well as the corporation in which he owns a controlling interest from entering into the lawn care services contract with the St. Tammany Parish Hospital Service District No. 2.” This opinion was issued on October 9, 1990.
This request for a supervisory writ followed.
SUPERVISION OR JURISDICTION OF THE PARISH OVER THE JADE-DISTRICT CONTRACT
Bagert asserts the Board erred in finding the District operates within the agency of the Parish and is under the Parish’s supervision and jurisdiction. He contends that the District was created by the State, and not by the Parish; Bagert is an elected official of the Parish, and not the State; and, therefore, it is permissible for Bagert (and Jade) to contract with the District. The Board argues that because the Parish has the authority to appoint six of the District’s commissioners and has the power to remove commissioners for cause, it exercises “supervision and oversight with regard to the operation of the District” and can “take responsive action where appropriate”. The Board asserts that “such power suggests the conclusion that the District is an entity within the political subdivi *1267 sion of the parish government” and, therefore, La.R.S. 42:1113(A) is applicable. Both sides cite In re Schneckenburger, 518 So.2d 497 (La.1988) and In re Beychok, 495 So.2d 1278 (La.1986) in support of their positions.
The issue in this writ is a question of statutory interpretation. The following rules found in Bunch v. Town of St. Francisville, 446 So.2d 1357, 1360 (La.App. 1st Cir.1984) are applicable:

When a law or ordinance is clear and free from all ambiguity, it must be given effect as written....

When interpreting a law (ordinance), the court should give it the meaning the lawmaker intended. It is presumed that every word, sentence or provision in the law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. Conversely, it will not be presumed that the lawmaker inserted idle, meaningless or superfluous language in the law or that it intended for any part or provision of the law to be meaningless, redundant or useless. The lawmaker is presumed to have enacted each law with deliberation and with full knowledge of all existing laws on the same subject. The meaning and intent of a law is to be determined by a consideration of the law in its entirety and all other laws on the same subject matter, and a construction should be placed on the provision in question which is consistent with the express terms of the law and with the obvious intent of the lawmaker in enacting it. Where it is possible to do so, it is the duty of the courts in the interpretation of laws to adopt a construction of the provision in question which harmonizes and reconciles it with other provisions. A construction of a law which creates an inconsistency should be avoided when a reasonable interpretation can be adopted which will not do violence to the plain words of the law and will carry out the intention of the law maker....
When the expressions of a law are “dubious”, the most effectual way of discovering the true meaning of the law is to consider the reason and spirit of it, or the cause which induced the lawmaker to enact it.... When a law is susceptible to two or more interpretations, that which affords a reasonable and practical effect to the entire act is to be preferred over one which renders part thereof ridiculous or nugatory.... If there is an irreconcilable conflict between the provisions of a law, only one provision can prevail.
(Emphasis added; citations omitted)
See also La.R.S. 1:1 et seq.; La.C.C. art. 9 et seq.; Achee v. Louisiana State Employees’ Retirement Board, 527 So.2d 1116, 1118-1119 (La.App. 1st Cir.1988); Notoriano v. Anthony, 527 So.2d 1120, 1121-1122 (La.App. 1st Cir.1988).
The pertinent statutory language herein is “No public servant [Bagert] ... or legal entity in which he has a controlling interest [Jade] shall ... enter into any contract ... that is under the supervision or jurisdiction of the agency [Parish] of such public servant.” Stated another way, pursuant to La. R.S. 42:1113(A), neither Bagert nor Jade may enter into any contract that is under the supervision or jurisdiction of the Parish. Thus, we must answer the question of whether the Jade-District contract is under the supervision or jurisdiction of the Parish as a matter of law. The answer to this question lies in the laws creating the Parish and the District.
The governing authority of St. Tammany Parish is the St. Tammany Parish Police Jury (Parish) which exists pursuant to La.R.S. 33:1221 et seq. As a police jury, the Parish is a creature and subordinate political subdivision of the State, and, as such, only possesses those powers conferred on it by the State’s constitution and statutes.[3] La. Const. of 1974, art. VI, § 7(A); La.R.S. 33:1236; Rollins Environmental Services of Louisiana, Inc. v. Iberville Parish Police Jury, 371 So.2d 1127 (La.1979); Callais Cablevision, Inc. v. *1268 Houma Cablevision, Inc., 451 So.2d 6 (La. App. 1st Cir.), writ denied, 452 So.2d 1175 (La.1984). The Parish does not have general power over the District pursuant to La. Const. of 1974, art. VI, § 15 because the Parish did not create the District. It has not been asserted or shown that the Parish has consolidated or merged the District into itself pursuant to La. Const. of 1974, art. VI, § 16.
Act 180 of 1984 only confers upon the Parish the powers to (1) appoint six commissioners to the District’s governing authority, and (2) remove commissioners for cause; it does not confer upon the Parish the power of “supervision or jurisdiction” over contracts executed by the District. Pursuant to Section 3(7) of the Act, the District is given the power to “contract for ... the provision of services ... which will assist the commission in providing quality health care for the district”, and pursuant to Section 8(A), the District is given the power to “contract obligations ... necessary and proper for the carrying out of the objects and purposes for which the hospital service district was created.” Nowhere in the Act are these powers subordinated to the Parish. We reject the Board’s contention that the powers of appointment and removal given to the Parish also confer by implication the powers of supervision and jurisdiction by the Parish over the District’s contracts. A review of the entirety of the Act shows that it was the intention of the legislative branch of State government to establish the District as an autonomous unit of state government, except for the two powers specifically granted to the Parish.[4]
The advisory opinion issued by the Board is in error as a matter of law.
DECREE
For the foregoing reasons, the writ issued herein is made peremptory, the advisory opinion issued to Bagert by the Board is vacated, and judgment is rendered in favor of Bagert and against the Board declaring that the Jade-District contract is not in violation of La.R.S. 42:1113(A).
REVERSED AND RENDERED.
SHORTESS, J., dissents with reason.

. The historical and statutory notes to La.R.S. 46:1053 show the following:
St. Tammany Parish Hospital Service Districts

See note, post, relative to the creation of hospital service districts for St. Tammany Parish by Acts 1984, No. 180.

Historical and Statutory Motes
St. Tammany Parish Hospital Service Districts: Acts 1984, No. 180, effective August 1, 1984, created the St. Tammany Parish Hospital Service District No. 1 and the St. Tammany Parish Hospital Service District No. 2. The title of Act 180 provided:
"An Act to create the St. Tammany Parish Hospital Service District No. 1 and the St. Tammany Parish Hospital Service District No. 2; to provide for the boundaries and purposes of each district; to create and provide with respect to a board of commissioners as the governing authority for each such district, in-eluding provisions for appointment and membership of each such commission, for the powers, duties, and responsibilities of each commission to acquire, construct, maintain, improve, and administer a health care facility or facilities and to tax and to issue bonds for costs thereof; to provide security for the outstanding indebtedness of the St. Tammany Parish Hospital Service District; and otherwise to provide with respect thereto.”
Section 13 of Acts 1984, No. 180 provided:
"All laws or parts of law in conflict or inconsistent herewith, and in particular the provisions of Act No. 129 of 1950 and Act No. 116 of 1958, are hereby repealed.”
Acts 1984, No. 180 was amended by Acts 1986, No. 353 with respect to the term of service, reappointment, and per diem and compensation of the board of commissioners of the St. Tammany Hospital Service District No. 1.
Act 180 has been placed in the Revised Statutes in the Table of Local and Special Acts.

. The Board's initial advisory opinion was rendered on February IS, 1990, but it was not issued until March 20, 1990. On February 23, 1990, Bagert requested a reconsideration of the initial opinion.

. It has not been asserted or shown that the Parish is a local governmental subdivision which exercises any power or function necessary, requisite or proper for the management of its affairs, not denied by general law or inconsistent with the constitution, as provided for in La. Const. of 1974, art. VI, §§ 5(F) or 7(A).

. We note that Section 12 of Act 180 specifically states that it is "intended to carry out a function of the state to protect the health and welfare of the inhabitants of the state to be affected thereby ...” and the District was created by the State legislature. However, pursuant to La. Const, of 1974, art. IV, § 1(B) and art. XIV, § 6, the legislature was mandated to allocate the functions of the executive branch of State government into not more than twenty departments not later than December 31, 1977. This was accomplished by enactment of Title 36 of the Revised Statutes in the Executive Reorganization Act, Acts 1977, No. 83, effective June 22, 1977. We have reviewed this Act and its amendments and do not find a placement for the District. See, in particular, La.R.S. 36:4; 36:251 et seq; and 36:259.